**Greg Claessens, OSB No. 133263**
Attorney for Plaintiff, Lindsay Pastore
Claessens Law
345 Lincoln St. SE
Salem, Oregon 97302
greg@claessenslaw.com
Phone: 503-385-0121

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| LINDSAY PASTORE,<br>        Plaintiff,<br><br>   v.<br><br>UNITED STATES OF AMERICA,<br>Dr. BRANDON CORNEJO, Dr.<br>JERAMY PETERS, Dr. JOSEPH<br>CHIEN, Dr. THIEN CHUONG<br>RICHARD LY, Dr. JEANETTE<br>ARDANS, and Dr. ERIC JUSTIN<br>WEATHERS<br>        Defendants. | Case No.: 3:18-cv-00064<br><br>**COMPLAINT**<br>Personal Injury Action (28 U.S.C. §<br>1332)<br>DEMAND FOR JURY TRIAL<br><br>**Prayer Amount: $2,900,000** |

**COMES NOW** Lindsay Pastore (hereinafter Plaintiff), by counsel, for her claims and

causes of action against the United States of America, Dr. Brandon Cornejo, Dr. Jeramy Peters,

Dr. Joseph Chien, Dr. Thien Chuong Richard Ly, Dr. Jeanette Ardans, and Dr. Eric Justin

Weathers, (hereinafter "Defendants"), complains and alleges as follows:

**INTRODUCTION**

1. **Federal Claims**

This is an action against the Defendants, in part, under the Federal Tort Claims Act, 28

U.S.C. §2671, *et seq*. and 28 U.S.C. §1346(b)(1), for professional malpractice and intentional

infliction of emotional distress in connection with the medical care provided to Plaintiff by the Department of Veterans Affairs at the Portland Veterans Affairs Medical Center.

The claims herein are brought against the Defendants pursuant to the Federal Tort Claims Act (28 U.S.C. §2671, et seq.) and 28 U.S.C. §1346(b)(l), for money damages as compensation for personal injuries caused by the Defendant's negligence.

Plaintiff has fully complied with the provisions of 28 U.S.C. §2675 of the Federal Tort Claims Act. Standard Form 95 is attached as Exhibit 1[1].

These claims have been timely filed. Plaintiff timely served notice of her claims on the appropriate agency, the Department of Veterans Affairs, less than two years after the incident forming the basis of this suit.

Plaintiff is now filing this Complaint pursuant to 28 U.S.C. § 2401(b) after receiving the Department of Veterans Affairs' November 9, 2017 notice of "final denial of administrative claim." Administrative Tort Claim Denial Letter attached as Exhibit 2. This complaint has been filed within six months of that denial.

**2. Oregon State Claims**

This is an action against the individuals, Dr. Brandon Cornejo, Dr. Jeramy Peters, Dr. Joseph Chien, Dr. Thien Chuong Richard Ly, Dr. Jeanette Ardans, and Dr. Eric Justin Weathers, in part, for the Oregon common law tort of false imprisonment.

## JURISDICTION AND VENUE

Jurisdiction is proper under 28 U.S.C. §1346(b)(l) and 28 U.S.C. §1332. Plaintiff exhausted her remedies through the Federal Tort Claims procedure and brings this lawsuit within

---

[1] Please note that Exhibit 1 includes only the two-page form 95 filing. Plaintiff attached a great number of documents with form 95 such that it would have been a problem to include them here. These attachments are available upon request.

six months therefrom. Venue is proper under 28 U.S.C. §1391 because the events at issue

occurred in Multnomah County, Oregon.

## THE PARTIES

1.

Plaintiff is, and at all times relevant hereto was, a resident of Marion County, Oregon.

Plaintiff is a veteran of the United States Air Force.

2.

Defendant United States of America, through its agency, the Department of Veterans

Affairs, operates the Portland Veterans Affairs Medical Center located at 3710 SW US Veterans

Hospital Rd, Portland, OR 97239.

3.

At all times relevant to this complaint Defendants Dr. Brandon Cornejo, Dr. Jeramy

Peters, Dr. Joseph Chien, Dr. Thien Chuong Richard Ly, Dr. Jeanette Ardans, and Dr. Eric Justin

Weathers were hereto practicing medicine at the Portland Veterans Affairs Medical Center.

## RESPONDEAT SUPERIOR

4.

At all times relevant to this case, the directors, officers, operators, administrators,

employees, agents, staff and doctors were employed by and/or acting on behalf of the Portland

Veterans Affairs Medical Center.

5.

At all times relevant to this case, the directors, officers, operators, administrators,

employees, agents, staff and doctors acted within their respective capacities and scopes of

employment for the Portland Veterans Affairs Medical Center.

//

6.

The Portland Veterans Affairs Medical Center is part of the Veterans Administration, an agency of the United States of America.  Defendant, United States of America, is responsible for the negligent acts of their employees and agents under respondeat superior.

**FACTUAL ALLEGATIONS**

7.

On January 5, 2016, Plaintiff voluntarily went to the Portland Veterans Affairs Medical Center (hereinafter VA) emergency department for chest congestion relief and fast acting anxiety medicine to help her address a recent episode of increased anxiety.

8.

Plaintiff suffers from severe anxiety and Post Traumatic Stress Disorder (PTSD) as a result of the Military Sexual Trauma (MST) and combat related moral injury she experienced while in the military.

9.

After being given fast acting anxiety medicine, breathing treatments and a chest x-ray in the emergency department with good results, Plaintiff voluntarily agreed to spend the night in the VA's inpatient psychiatric ward (5C).  It was after 10:00 p.m. and she thought it would be safer to stay in the ward than drive all the way home to Salem just to drive back again in the morning for an appointment with her PTSD counselor.  After staying safely through the night, she requested to be released to go to her counseling appointment.

//

//

//

//

10.

On January 6, 2016 she was told by the ward team, at the direction of the Defendants, that she was "unsafe for discharge[2]".  At this point Plaintiff was a voluntary patient, not on a psychiatric hold, was not found to be a high suicide risk, and had no active suicidal ideation or suicidal intent.  It was not discussed with Plaintiff at the time but her medical records indicate as early as January 6, 2016 that the Defendants were planning on holding her for a week[3].

11.

The ward conditions at the VA were triggering to Plaintiff's PTSD and caused her increased anxiety, fear, flashbacks, panic attacks, nightmares, and the overall exacerbation of her PTSD symptoms.  The physical layout of the ward, room dressings, and surveillance of Plaintiff by Defendants closely mirrored the conditions of the sexual assault she experienced in the military.  Plaintiff made these facts known to Defendants immediately and repeatedly. Defendants were aware that the environment was making Plaintiff's condition worse, noting "Pt clearly has been triggered by hospitalization due to similar physical features of hospital with the place she was held captive by her attacker[4]."

12.

Multiple times a day for the next four days Plaintiff begged the Defendants to release her.  On January 8, 2016, after again pleading to be released, Defendants threatened that if she requested to leave she would be placed on a court hold.  The threat of continued confinement in a setting that resembled where Plaintiff was held hostage and sexually assaulted while in the military, caused Plaintiff severe mental distress and anguish.

---

[2] Progress Note by Dr. Jeramy Peters, January 7, 2016 @ 0741. [These references have been made in the same manner as they appear in the medical record for the ease of those seeking to review the record].
[3] Progress Note by Dr. Brandon Cornejo, January 8, 2016 @ 08:08.
[4] Progress Note by Dr. Jeramy Peters, January 8, 2016 @ 1136.

13.

Plaintiff was tricked, threatened, and mislead in an ongoing effort to confine her from January 5, 2016 to January 9, 2016 without a legally recognized official hold. She was told numerous times that she was not free to leave. The 5C ward is a locked, badge access only, secured wing of the Portland VA Hospital. There was no way for Plaintiff to leave without being officially released by staff.

14.

On January 09, 2016, after Plaintiff again demanded to be released, a temporary psychiatric hold was sought and obtained by Defendants through the actions of Dr. Eric Weathers. Defendants included in their request for a court hold that Plaintiff was a danger to herself because she crafted a noose while in confinement. In actuality, Plaintiff had tied and wound a very small nurse's-scrub-type-top in a grounding technique to relieve anxiety. Rolling or stretching material in this fashion is a stress reducing technique that counselors had taught her. It would not have been even remotely possible for Plaintiff to have used this top as a noose. Furthermore, Plaintiff explained that she was not making a noose or any other implement of self-harm to Defendants. Nevertheless, Defendant's included the making of this noose as justification for the need for a court psychiatric hold.

15.

On January 11, 2016 the Multnomah County Mental Health and Addiction Services Division found no probable cause for the hold so it was dismissed. Plaintiff was finally released. Plaintiff was terrified, triggered, traumatized and mentally damaged as a result of this involuntary confinement and the treatment she received from the 5C staff.

//

//

16.

Plaintiff's horrible experience at the VA hospital was exacerbated by additional medical errors.  The purpose of Plaintiff's initial visit to the VA hospital was to obtain fast acting anxiety medication, specifically the benzodiazepine lorazepam.  Plaintiff had taken Lorazepam in the past and found that it worked very well for treating her acute anxiety episodes.  Plaintiff had a prescription for Lorazepam but needed to have it filled.

17.

Lorazepam was administered by the emergency room staff on January 5, 2016 who noted that it had a good result.  However, once she was admitted and forced into remaining in the 5C ward the drug and all other benzodiazepines were denied for several days.  Plaintiff begged with staff to be properly treated for her anxiety with these drugs. Two reasons are cited in the medical records for the denial.

18.

The first reason was concern over an atrial fibrillation.  An electrocardiogram was done on admission and initially indicated a possible atrial fibrillation (a-fib).  Her record then indicates multiple incidents where she was denied Benzodiazepine as treatment as a result of the possible a-fib.  On January 7, 2016 at 11:35 am, Dr. Amarprit Bains reviewed the electrocardiogram results and found that Plaintiff did not have a-fib.  Despite this, her treating physicians continued to deny her the needed and requested lorazepam treatment at least twice because of the a-fib concern.

19.

The second reason her treating physicians continued to deny benzodiazepine treatment was because it was, "reported to slow the processing of trauma in patients with PTSD long-term,

not recommended for patients with PTSD[5]." Plaintiff was admitted for psychiatric crisis and was seeking short-term immediate relief. She repeatedly explained that benzodiazepine treatment had worked as a short-term solution for her. Plaintiff argued with Defendants that it was an error to deny much needed short-term relief due to remote and minor long-term concerns. Even Defendants eventually recognized this error noting, "[u]nfortunately, it seems that the bonds of trust and therapeutic relationship have been severed, perhaps irrevocably, as [Plaintiff] states she will never again utilize the crisis line or come to the VA. For now, we will make our best attempt to not cause further damage and to try and treat her severe anxiety. While benzodiazepines have been reported to slow the processing of trauma in patients with PTSD long-term, their use in this acute setting certainly outweighs that risk[6]."

20.

On January 9, 2016 Plaintiff was finally given Lorazepam for the first time after leaving the ER on January 5, 2016. After this treatment her doctors noted Plaintiff was "calmer, appears more rested[7]." After being discharged from 5C her treating doctor prescribed her four pills of Lorazepam a day with six months of refills amounting to 720 pills further indicating how erroneous it was to deny the medication due to long term concerns.

21.

Plaintiff has not been the same since this experience. She has been withdrawn and her anxiety is much worse. This experience has negatively affected all aspects of her personal and professional life.

---

[5] Multiple references in chart notes.

[6] Progress Note by Dr. Eric Justin Weathers, January 9, 2016 @ 1129.

[7] Progress Note by Dr. Lindsay Howard, January 10, 2016 @ 1041.

22.

Plaintiff has a miniature furniture business that caters to collectors.  This business has suffered greatly as a result of this experience.  Plaintiff cannot focus/concentrate long enough to make miniatures like she did before. If it wasn't for significant help from her sister, listing and shipping items Plaintiff already had prior to going into 5C, she would have had to close her business. There is still concern that this may happen. Her sales are down because she is so scattered and lacks the mental energy to do what she needs to do to make new inventory and network with customers.

23.

After the events at the VA,  Plaintiff has had trouble leaving the house.  She is concerned that she might have a panic attack while out and be forced to go somewhere like the 5C ward at the VA again.  She's afraid to mention anything to her VA counselor or VA staff that might cause them to send her to the 5C ward involuntarily. She describes her feelings as completely overwhelming; she replays the events in her mind trying to figure out what she did wrong to make them hold her.  She is unable to stop the thought loops and images. These thought loops also trigger thought loops of prior traumas. This is very distracting and makes it hard for her to be productive. She gets upset or get headaches and has to lay down.  Plaintiff's sleep is broken by nightmares of her experiences in the 5c ward.  She does not have much energy to engage in the normal activities of life.

24.

Plaintiff's family suffers too.  She has tremendous trust issues.  She has no desire to be intimate with her husband or be touched at all.  She describes feeling, "disgusting and subhuman."  She is not able to interact with her children and husband in normal ways. She feels an overwhelming urge to just want to hide out with her service dog and avoid all stress and

noise. She is not as patient as she once was and is quick to become irritated.  Her husband does

almost all the house chores.  She used to cook but it's too hard for her to plan and follow recipes

now. Her husband handles all of the bills, shopping, schedules, and takes the kids to

appointments. He usually takes them to school too.  Plaintiff used to do activities on the

weekends but now just wants to stay home where it's safe. She used to talk to her family almost

every day but now finds it hard to answer phone calls or even respond to texts.  She sums up her

feelings as being sad that she cannot be the mother and wife that she wants to be as result of

these issues.

25.

On April 25, 2016 Plaintiff's disability rating was increased from 70% to 100%

permanent and total (not expected to get better). The effective date is listed as January 5, 2016,

the day she first entered into the 5C ward, since her record shows exacerbated PTSD symptoms

as a result of her experience at the Portland VA.

**FIRST CLAIM FOR RELIEF**

**Negligence (Medical Malpractice)**

26.

Plaintiff incorporates paragraphs 1 - 25 as set forth above.

27.

The Defendants had a duty to provide medical care and to provide that care at level at

which the average, prudent provider in the community would practice.

//

//

//

//

COMPLAINT – 10

28.

Defendant through the acts and omissions of its medical providers was negligent, as stated above and in one or more of the following:

1.   In confining Plaintiff in conditions similar to that of her military sexual trauma causing severe distress;

2.   In imprisoning Plaintiff and forcing continued treatment far after doctors note that the conditions of her hold are causing her condition to worsen,

3.   In denying Plaintiff fast acting anxiety medication (benzodiazepines/lorazepam) because of arterial fibrillation concerns, after arterial fibrillation had been ruled out; and/or

4.   In denying Plaintiff fast acting anxiety medication (benzodiazepines/lorazepam) because of long term treatment concerns that were clearly and obviously outweighed by short term concerns.

29.

As a direct, foreseeable, and proximate result of Defendants' negligence, Plaintiff sustained serious and severe mental trauma.  She will continue to suffer mental anguish in the future; she has suffered a loss of the enjoyment of life, and will continue to suffer a loss of the enjoyment of life in the future; she has lost wages, and will continue to lose wages in the future, all to her noneconomic damages in amount to be proven at trial but not to exceed $2,875,000.

30.

As a direct, foreseeable, and proximate result of Defendants' negligence, Plaintiff sustained economic damages in amount to be proven at trial but not to exceed $25,000.

//

//

31.

The acts and/or omissions set forth above would constitute a claim under the law of the State of Oregon.

## SECOND CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

32.

Plaintiff incorporates paragraphs 1 - 25 as set forth above.

33.

The actions Defendants caused Plaintiff to suffer severe emotional distress.  Plaintiff describes the ordeal as a week of psychological torture.

34.

Plaintiff expressed to the Defendants that their forced and unwanted treatment regime of captivity was causing her severe emotional distress.  The Defendants were substantially certain that their actions would cause severe emotional distress; several of them even note as much in their medical entries.

35.

Plaintiff and the Defendants had a special relationship; patient-doctor.  That relationship informs the types of conduct that is tolerable between them.  Here the actions of the Defendants exceed the bounds of reasonable medical treatment and socially tolerable conduct.  Treatment of military sexual trauma victims in such a way that causes them to experience days of re-traumatization and victimhood is beyond tolerable social conduct.

36.

As a direct, foreseeable, and proximate result of Defendants' negligence, Plaintiff sustained serious and severe mental trauma.  She will continue to suffer mental anguish in the

future; she has suffered a loss of the enjoyment of life, and will continue to suffer a loss of the enjoyment of life in the future; she has lost wages, and will continue to lose wages in the future, all to her noneconomic damages in in amount to be proven at trial but not to exceed $2,875,000.

37.

As a direct, foreseeable, and proximate result of Defendants' negligence, Plaintiff sustained economic damages in amount to be proven at trial but not to exceed $25,000.

38.

The acts and/or omissions set forth above would constitute a claim under the law of the State of Oregon.

## THIRD CLAIM FOR RELIEF

### False Imprisonment

### (Oregon Common Law Claim)

39.

Plaintiff incorporates paragraphs 1 - 25 as set forth above.

40.

Plaintiff alleges that the individuals, Dr. Brandon Cornejo, Dr. Jeramy Peters, Dr. Joseph Chien, Dr. Thien Chuong Richard Ly, Dr. Jeanette Ardans, and Dr. Eric Justin Weathers (hereinafter 'Defendant Doctors') subjected her to the Oregon common law tort of false imprisonment.

41.

Plaintiff was confined in the 5C ward of the Portland Veterans Affairs Medical Center from January 5, 2016 to January 11, 2016.

//

//

42.

The Defendant Doctors intended to confine Plaintiff.  They used threats, intimidation, and their position of authority to confine Plaintiff.

43.

Plaintiff was aware of her confinement and expressed frequently the distress that it caused her.

44.

At no point was the confinement of Plaintiff lawful.  From January 5, 2016 to January 9, 2016, Plaintiff was held by the Defendant Doctors without a court hold.  During this time Plaintiff was physically uncapable of unlocking the door and was constantly being led to believe that she did not have the authority to leave.  On January 9, 2016 a temporary court hold was obtained (Multnomah case no: 16CC00216), but only with the inclusion of false information.  A temporary hold would not have been issued with accurate information and, in fact, once the hold was investigated by the Community Mental Health Program on January 11, 2016, the hold was dismissed and found to be without probable cause.

45.

As a direct, foreseeable, and proximate result of Defendants' negligence, Plaintiff sustained serious and severe mental trauma.  She will continue to suffer mental anguish in the future; she has suffered a loss of the enjoyment of life, and will continue to suffer a loss of the enjoyment of life in the future; she has lost wages, and will continue to lose wages in the future, all to her noneconomic damages in the sum of $2,875,000.

46.

As a direct, foreseeable, and proximate result of Defendants' negligence, Plaintiff sustained economic damages in amount to be proven at trial but not to exceed $25,000.

## PRAYER

WHEREFORE, Plaintiff prays judgment against any and all Defendants jointly and severally as follows:

1. Economic Damages:

    a. in an amount to be proven at trial but not to exceed $25,000.00;

2. Noneconomic Damages:

    a. in an amount to be proven at trial but not to exceed $2,875,000.00.

3. For Plaintiff's costs, fees, and disbursements herein;

4. For such other and further relief as the court may deem proper.

**DATED:** <u>January 11, 2018</u>

<u>s/ Greg Claessens</u>
GREG CLAESSENS,
OSB #133263
greg@claessenslaw.com
Attorney for Plaintiff, Lindsay Pastore